**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM PRESCOTT,** | ) | |
| | ) | **Civil Action No. 3:11-203** |
| **Plaintiff,** | ) | |
| v. | ) | **Judge Kim R. Gibson** |
| | ) | |
| **R&L TRANSFER, INC., GREENWOOD** | ) | |
| **MOTOR LINES d/b/a R&L CARRIERS,** | ) | |
| **and R&L CARRIERS SHARED SERVICES,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.    Introduction**

This matter comes before the Court upon cross-motions for summary judgment

filed by Plaintiff William Prescott ("Plaintiff" or "Prescott") (ECF No. 95) and Defendants

R&L Transfer, Inc., Greenwood Motor Lines d/b/a R&L Carriers, and R&L Carriers Shared

Services LLC (collectively, "Defendants" or "R&L") (ECF No. 96).  Each party has filed a

brief in opposition to the opposing party's motion.  (ECF No. 102, 104).  For the reasons

that follow, Prescott's motion for summary judgment will be denied; R&L's motion for

summary judgment will be granted in part and denied in part.

**II.    Jurisdiction and Venue**

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 and

28 U.S.C. § 1441.  Venue is proper under 28 U.S.C. § 1391.

### III.     Background

In July 2009, Prescott was working as a self-employed independent truck driver for FedEx Ground.  (ECF No. 99-3 at 70).  Prescott's daily route required him to pull two twin-trailers (also known as "twin pups") along a stretch of I-80 between the FedEx terminal in Lewisbury, Pennsylvania and a turn-around point in Emlenton, Pennsylvania.  (*Id*. at 70-71, 74-75).  Prescott would switch trailers with another driver in Emlenton and return home along the same route.  (*Id*. at 71).

At approximately 12:35 A.M. on the night of July 14, 2009, Prescott was driving his standard route west on I-80 towards Emlenton.  (ECF No. 98-1 at 127, 133, 137).  Clark Mead ("Mead"), a driver for R&L, was operating a green R&L truck in the immediate vicinity of Prescott's vehicle.  (ECF No. 99-8; ECF No. 99-18).  Two other commercial drivers, Stephen Page ("Page") and David Desrosiers ("Desrosiers"), were traveling west on I-80 some distance behind Mead and Prescott.  (ECF No. 99-1 at 10-11; ECF No. 99-2 at 7-8).

According to Prescott, he was driving at a speed of approximately 60 or 65 miles per hour in the right-hand lane when he noticed a green tractor with white trailers (subsequently identified as the vehicle driven by Mead) approaching on the left in an attempt to pass.  (ECF No. 98-1 at 135-36).  Prescott testified at his deposition that the green truck began to merge back into the right lane before it had completely cleared Prescott's vehicle, forcing Prescott off the highway.  (*Id*. at 136).  Prescott hit his head and lost consciousness as he left the road, and he has no other recollection of the events of that night.  (*Id*. at 136-37; ECF No. 99-3 at 17-20).

Immediately prior to the accident, Page and Desrosiers were driving in tandem approximately a half a mile behind Mead and Prescott. (ECF No. 99-1 at 15-16, 19; ECF No. 99-2 at 17). Page, traveling in the lead, testified that he and Desrosiers had been following the two vehicles for several miles and were slowly gaining ground. (ECF No. 99-1 at 16). Page observed that the trucks belonging to Prescott and Mead were traveling with one in front of the other, rather than side by side, although he could not tell which lane they were in. (*Id*. at 18-19). Neither Page nor Desrosiers ever saw Mead's truck change lanes or attempt a passing maneuver, although each acknowledged losing visual contact with the vehicles on occasion due to the twists and turns of the road. (*Id*. at 24-28; ECF No. 99-2 at 85, 88, 91).

While approaching the site of the accident, Page had a clear view of Mead's vehicle. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 51-53, 95-96). Page saw Mead suddenly engage the hazard lights on his truck and slowly pull off to the right side of I-80. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 101-02). Page testified that he had a direct line of sight to Mead's vehicle both immediately before and after Mead engaged his hazard lights. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 51-53, 95-96). Page suspected that Mead's truck had blown a tire and prepared to pull over to offer assistance. (ECF No. 99-1 at 74). As he pulled over, Page observed Prescott's truck in flames at the bottom of the embankment. (*Id*. at 29-30, 89). Page had not seen Prescott's vehicle leave the road and had assumed that the truck in front of Mead had simply continued on along I-80. (*Id*. at 74).

Page parked his truck several hundred yards in front of Mead's R&L truck and jumped down the embankment to render assistance to Prescott. (*Id*. at 34-36). Page opened the door of Prescott's vehicle and removed Prescott from the cab. (*Id*. at 36-37). He then called to Desrosiers and Mead for assistance and the three men pulled Prescott away from his burning vehicle. (*Id*. at 38-40, 93-94). Page observed that Prescott had suffered severe burns and injuries all over his face and arms. (*Id*. at 37-39). After removing Prescott from his vehicle, Page did not leave Prescott's side at any point until medical personnel arrived. (*Id*. at 97).

While waiting for medical help to arrive, Prescott slipped in and out of consciousness. (*Id*. at 95, 98-100). Page testified that it "took him a little bit, and then he seemed to come out of it and asked: what's happening? What's going on? And – and he cried about his truck, and – and we talked to him." (*Id*. at 40-41). Page asked Prescott how the accident had occurred and Prescott said he didn't know what had happened. (*Id*. at 100). Emergency medical responders similarly indicated that Prescott expressed no recollection as to what had happened before or after the accident. (ECF No. 99-6 at 36-37, 47; ECF No. 99-7 at 1; ECF No. 99-32 at 1). However, Desrosiers testified that Prescott blurted out the following statement shortly after being pulled from his truck: "I was cut off, I was cut off. My tractor, my tractor was cut off." (ECF No. 99-2 at 23-24).

At some point after Prescott was removed from his vehicle, Desrosiers instructed Mead to move his truck to make room for emergency responders. (*Id*. at 16). Mead re-entered his vehicle and left the scene, continuing his route along I-80. (*Id*. at 26-27; ECF

No. 99-18).  Neither Page nor Desrosiers saw Mead leave.  (ECF No. 99-1 at 108-09; ECF No. 99-2 at 78, 109).

Two Pennsylvania State Troopers eventually arrived on the scene.  (ECF No. 99-1 at 44-45; ECF No. 99-2 at 30).  Trooper Richard L. Magnuson conducted an investigation and observed that there was no evidence that Prescott's vehicle braked suddenly or took any evasive action.  (ECF No. 99-22 at 83).  Trooper Magnuson also noted that Prescott's vehicle had left the road near the crest of a hill where the road curved away to the left. (*Id*. at 48).  Based on this evidence, Trooper Magnuson concluded that Prescott had been involved in a single-vehicle accident and cited Prescott for driving too fast for conditions in violation of 75 Pa. C.S. § 3361.  (*Id*. at 76-77; 85-87; ECF No. 99-4).  Although Trooper Magnuson took statements from Page and Desrosiers, neither of them mentioned anything about Prescott having been cut off by Mead.[1]  (ECF No. 99-1 at 44-45; ECF No. 99-2 at 28, 30, 33-35).  Trooper Magnuson could not obtain a statement from Mead because he had already left the scene.[2]

After the accident, Prescott was hospitalized until November 25, 2009.  (ECF No. 99-35; ECF No. 99-36; ECF No. 99-40; ECF No. 99-41).  His daughter, Barbara Bennett ("Bennett"), testified that Prescott woke up one day from a "four month coma" and spontaneously stated, "Barbara, don't worry about your driving, worry about that man in the green truck because he sucked me up and pushed me off the road."  (ECF No. 103-22 at 4).  A friend of Bennett's, Andrea Wise, testified that she overheard the same statement

---

[1] Desrosiers also failed to mention Prescott's purported dying declaration when interviewed by a forensic investigator approximately one year later.  (ECF No. 99-19).

[2] Mead passed away from an illness before his deposition could be taken.

from Prescott. (ECF No. 98-5 at 47). Despite Bennett's testimony that Prescott was in a coma for four months, medical records and posts from a blog maintained by Prescott's family suggest that Prescott was frequently conscious and alert throughout his hospitalization. (ECF No. 99-36; ECF No. 99-37).

On August 19, 2011, Prescott initiated the instant action by filing a complaint in the Court of Common Pleas of Clearfield County, Pennsylvania. (ECF No. 1-2). The complaint was removed to this Court on September 8, 2011. (ECF No. 1). In his complaint, Prescott primarily asserts that R&L is vicariously liable for the negligence of its employee, Mead. (ECF No. 1-2). Prescott also asserts direct negligence claims based on R&L's alleged failure to train, supervise, or provide adequate guidelines to Mead (*Id*. at ¶ 60) and negligent entrustment (*Id*. at ¶ 63).

Prescott moved for summary judgment on May 15, 2014. (ECF No. 95). The following day, R&L filed its own motion for summary judgment. (ECF No. 96). Prescott filed a brief in opposition to R&L's motion on June 13, 2014 (ECF No. 102), and R&L responded to Prescott's motion on June 16, 2014. (ECF No. 104). Both motions are now fully briefed and ripe for review.

## IV. Standard of Review

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*; *Melrose, Inc. v. Pittsburgh*, 613 F. 3d 380, 387 (3d Cir. 2010). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also*

*McGreevy v. Stroup*, 413 F. 3d 359, 363 (3d Cir. 2005).  Material facts are those that will

affect the outcome of the trial under governing law.  *Anderson*, 477 U.S. at 248.  The

Court's role is "not to weigh the evidence or to determine the truth of the matter, but only

to determine whether the evidence of record is such that a reasonable jury could return a

verdict for the nonmoving party."  *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F. 3d 575,

581 (3d Cir. 2009).  "In making this determination, 'a court must view the facts in the light

most favorable to the nonmoving party and draw all inferences in that party's favor.'"

*Farrell v. Planters Lifesavers Co.*, 206 F. 3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v.*

*Unisys Corp.*, 32 F. 3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion

and identifying those portions of the record that demonstrate the absence of a genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party

meets this burden, the party opposing summary judgment "may not rest upon the mere

allegations or denials" of the pleading, but "must set forth specific facts showing that

there is a genuine issue for trial."  *Saldana v. Kmart Corp.*, 260 F. 3d 228, 232 (3d Cir. 2001)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n. 11 (1986)).

"For an issue to be genuine, the nonmovant needs to supply more than a scintilla of

evidence in support of its position – there must be sufficient evidence (not mere

allegations) for a reasonable jury to find for the nonmovant."  *Coolspring Stone Supply v.*

*Am. States Life Ins. Co.*, 10 F. 3d 144, 148 (3d Cir. 1993).

## V.    Discussion

### A.    Negligence – *Respondeat Superior*

In order to prevail on a negligence claim in Pennsylvania, a plaintiff must establish

the following four elements: "(1) a duty or obligation recognized by law; (2) a breach of

that duty; (3) a causal connection between the conduct and the resulting injury; and (4)

actual damages." *Grossman v. Barke*, 868 A. 2d 561, 566 (Pa. Super. 2005) (quoting *Estate of*

*Swift v. Northeastern Hosp.*, 690 A. 2d 719, 722 (Pa. Super. 1997)).  The doctrine of *respondeat*

*superior* provides that an employer "may be held liable for the acts of the [employee]

when those acts are committed during the course of his employment and within the scope

of his authority." *Valles v. Albert Einstein Med. Ctr.*, 805 A. 2d 1232, 1237 (Pa. 2002).  In the

absence of negligence by the employee, "an employer cannot be held negligent under the

doctrine of *respondeat superior*." *Keffer v. Bob Nolan's Auto Srvc., Inc.*, 59 A. 3d 621, 638 (Pa.

Super. 2012) (quoting *Skalos v. Higgins*, 449 A. 2d 601, 607 (Pa. Super. 1982)).

In the instant case, the sole issue in dispute is whether Prescott was forced off the

road by Mead.   After carefully reviewing the record, it is apparent that there are

numerous material disputes concerning this critical issue of fact.  As noted above, Prescott

testified at deposition that Mead forced him off of the road by prematurely merging into

the right lane during an attempt to pass.   Prescott's version of events is partially

corroborated by Desrosiers' testimony that Plaintiff declared immediately following the

accident that: "I was cut off, I was cut off!  My tractor, my tractor, I was cut off!"

Similarly, Prescott's daughter and a friend each testified that Prescott woke up in the

hospital one day and blurted out that he had been driven off of the road by a "green truck."

On the other hand, Page and Desrosiers each testified that the trucks driven by Mead and Prescott were traveling in line immediately preceding the accident, rather than side by side. Although they each acknowledged that they did not have a clear view of the two trucks at all times, neither Page nor Desrosiers saw any evidence that Mead attempted to pass Prescott prior to the accident. No other witness observed the accident, and the police trooper investigating the scene concluded that the incident involved only the vehicle driven by Prescott.[3]

Moreover, the reliability of the evidence cited by Prescott to support his claim is subject to challenge on several grounds. For example, although Desrosiers testified that Prescott declared that he had been "cut off" immediately after being pulled from his truck, Desrosiers never shared this declaration with the state troopers who interviewed him at the scene or with a private investigator who interviewed him approximately one year later. Desrosiers' testimony is also contradicted by Page, who testified that he "never left" Prescott's side and that Prescott expressed no recollection of the accident at all.

Similarly, Prescott's deposition testimony concerning his current recollection of being forced off of the road is undermined by contemporaneous reports from nearly every witness at the accident scene, each of whom indicated that Prescott had no memory of the accident. Moreover, R&L notes that, despite his current contention that he was the victim

_____

[3] A telephone conversation between Mead and another truck driver shortly after the accident is the subject of a pending motion *in limine*. In that conversation, Mead indicates to French that he observed Prescott's vehicle drive off of the road on its own. (ECF No. 99-8 at 79-81, 154).

of an alleged hit-and-run, Prescott never challenged his citation for excessive speed or

attempted to inform the police or anyone else that he was not at fault in the accident.

In short, resolving the critical factual disputes detailed above will depend heavily

upon the credibility of the various witnesses. These determinations are uniquely the

province of the jury. *See, e.g., United States v. Kole*, 164 F. 3d 164, 177 (3d Cir. 1998)

("Credibility determinations are the unique province of a fact finder . . ."). As such,

summary judgment in favor of either party would be improper as to this claim.

B.     **Direct Negligence**

In addition to asserting a vicarious liability negligence claim, Prescott asserts two

direct negligence claims against R&L: (1) that R&L was negligent for failing to adequately

train, supervise, or provide adequate guidelines to Mead; and (2) that R&L negligently

entrusted a truck to Mead despite that it knew or should have known that Mead lacked

the necessary fitness, competence, and experience to operate such a vehicle.[4] (ECF No. 1-2

¶¶ 60, 63(b)). A claim of "[n]egligent screening, hiring, training, supervision, or retaining

holds an employer directly liable for its own negligent failure to protect a plaintiff from an

employee that it knows, or has reason to know, is likely to cause injury." *Adams v. U.S.*

*Airways Group*, 978 F. Supp. 2d 485, 496 (E.D. Pa. 2013) (quoting Restatement (Second) of

Torts § 317). This claim is designed to provide a remedy "for injuries to third parties who

would otherwise be foreclosed from recovery under the principal-agent doctrine of

*respondeat superior* because the wrongful acts . . . are . . . outside the scope of employment."

---

[4] In his motion for summary judgment, Prescott does not affirmatively seek summary judgment as
to his direct negligence claims. (ECF No. 98). He does, however, oppose R&L's motion for
summary judgment as to these claims. (ECF No. 102 at 19-22).

*Belmont v. MB Inv. Partners, Inc.*, 708 F. 3d 470, 488 (3d Cir. 2013) (quotations omitted); *see*

*also Adams*, 978 F. Supp. 2d at 496 (noting that direct liability claims "differ from claims for

vicarious liability because they allow plaintiffs to recover for harms that occur when

employees act outside the scope of their employment."). To state a direct claim, the

plaintiff must allege "(1) a failure to exercise ordinary care to prevent an intentional harm

by an employee acting outside the scope of his employment, (2) that is committed on the

employer's premises, (3) when the employer knows or has reason to know of the necessity

and ability to control the employee." *Belmont*, 708 F. 3d at 487-88.

In the instant case, Prescott has produced no evidence indicating either that Mead

was acting outside of the scope of his employment when the accident occurred or that

R&L had any reason to suspect that Mead was unfit to drive a commercial truck. To the

contrary, the record indicates that Mead was an experienced commercial truck driver with

a license to operate the vehicle that he was driving at the time of the accident. (ECF No.

99-9). Before hiring Mead, R&L performed a background check, conducted a road test

evaluation, and provided training. (ECF No. 99-12; ECF No. 99-13; ECF No. 99-14; ECF

No. 99-15). The only complaint appearing on Mead's driving record occurred in 2005

while he was navigating through snowy and icy conditions. (ECF No. 100-2). There is

simply no evidence that R&L had any reason to suspect that Mead was an incompetent or

unsafe driver.[5]

---

[5] Prescott devotes a large portion of his brief to a discussion of Mead's cell phone records, suggesting that Mead may have been driving distracted because he was making personal telephone calls. (ECF No. 102 at 14-16). However, Prescott has not adduced any evidence that R&L had any reason to be aware of Mead's cell phone use. Thus, while this evidence might be pertinent to Mead's own negligence, Prescott has failed to connect it to R&L.

The same factors warrant summary judgment in R&L's favor on Prescott's

negligent entrustment claim. In Pennsylvania, negligent entrustment is defined as

follows:

> It is negligence to permit a third person to use a thing or to engage
> in an activity which is under the control of the actor, if the actor
> knows or should know that such person intends or is likely to use
> the thing or to conduct himself in the activity in such a manner as
> to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308. As noted above, there is no evidence in the record to

suggest that R&L had any reason to be concerned about Mead's ability to operate a

commercial truck.

**V. Conclusion**

For the reasons set forth above, Prescott's Motion for Summary Judgment (ECF

No. 95) is denied. R&L's Motion for Summary Judgment (ECF No. 96) is granted with

respect to Prescott's direct negligence claims and denied as to Prescott's vicarious liability

claim.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM PRESCOTT,            )
                                       )       Civil Action No. 3:11-203
               Plaintiff,         )
      v.                          )       Judge Kim R. Gibson
                                         )
R&L TRANSFER, INC., GREENWOOD   )
MOTOR LINES d/b/a R&L CARRIERS,   )
and R&L CARRIERS SHARED SERVICES, )
LLC,                                  )
                                         )
             Defendants.      )

### ORDER

And now, this **2ND** day of February, 2015, this matter coming before the Court

on Plaintiff's Motion for Summary Judgment (ECF No. 95) and Defendant's Motion for

Summary Judgment (ECF No. 96), and in accordance with the foregoing Memorandum

Opinion,

**IT IS HEREBY ORDERED** that Plaintiff's Motion is **DENIED**; Defendant's

Motion is **GRANTED** in part and **DENIED** in part.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE