IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WILLIAM M. PRESCOTT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:11-203 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| R&L TRANSFER, INC., GREENWOOD, | ) | |
| MOTOR LINES d/b/a R&L CARRIERS, | ) | |
| and R&L CARRIERS SHARED | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court in this matter are (1) Defendant's motion (ECF No. 191) to preclude evidence of lost income; (2) Defendant's motion (ECF No. 190) to preclude the testimony of Michael Zabel; (3) Defendants' motion (ECF No. 193) to preclude testimony of Jeffrey Wade; (4) Defendants' motion (ECF No. 199) to preclude evidence of Defendants' responses to requests for admissions; and (5) Plaintiff's motion (ECF No. 206) to quash Defendants' notice of intent to serve record subpoenas.[1] The parties have filed a separate response in opposition to each motion. (*See* ECF Nos. 209, 210, 208, 211, and 212). The motions have been fully briefed and are now ripe for disposition.

This case arises from personal injuries sustained by Plaintiff after the tractor-trailer that he was driving left the roadway and crashed in an embankment. Plaintiff alleges that Clark Mead, an employee of R&L who was also driving a tractor-trailer, forced Plaintiff

---

[1] In addition to the five motions addressed in this Order (ECF Nos. 191, 190, 193, 199, 206), the parties have filed a number of other motions in limine and *Daubert* motions. The Court will address those additional motions in a separate order.

1

off the road, causing the accident. The Court previously set forth the relevant background of this case in its Memorandum Opinion on the parties' cross-motions for summary judgment. (*See* ECF No. 170 at 2-6). Trial in this matter is currently scheduled to begin on September 8, 2015. The Court will separately address each of the pending motions listed above.

### (1) *Evidence of Lost Income (ECF No. 191)*

Defendants have filed a motion (ECF No. 191) to exclude Plaintiff's evidence of lost income. According to Defendants, Plaintiff intends to present evidence of his lost income resulting from the accident. Defendants contend that such evidence would be speculative and prejudicial. Specifically, Defendants argue that Plaintiff did not produce sufficient records during discovery to substantiate Plaintiff's post-accident loss of income and that Plaintiff did not disclose his intent to present lay testimony—rather than expert testimony—to establish his lost income until he filed his witness list. (*Id.* at 2-3). Thus, Defendants argue that this Court should exclude the testimony of Barbara Bennett and James Starnes as loss of income witnesses because they will present lay testimony rather than expert opinions and reports. (*Id.* at 3). In response, Plaintiff argues that Defendants were on notice of Plaintiff's intent to seek loss of income damages. (ECF No. 209 at 2). Plaintiff also argues that he is not required to present expert testimony to establish his loss of income resulting from the accident.

Generally, expert testimony is not required to establish loss of income damages. *See Maxfield v. Sinclair Int'l*, 766 F. 2d 788, 797 (3d Cir. 1985) (noting that lay testimony

based on a plaintiff's former earnings history is appropriate for proving future earnings damages where "[t]here were no projections in earnings for which expert testimony was required"). However, Federal Rule of Evidence 701 requires that a lay witness have a "reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F. 3d 73, 82 (3d Cir. 2009) (quoting *Eichorn v. AT & T Corp.*, 484 F. 3d 644, 649 (3d Cir. 2007)). Accordingly, here, Plaintiff will be permitted to present lay witness testimony to establish his lost earnings to the extent that the claim for damages and the testimony presented does not necessitate expert opinions or projections that would require expert testimony.

Furthermore, Plaintiff has presented exhibits in the form of discovery disclosures and deposition testimony showing that Defendants had sufficient notice of Plaintiff's intent to present evidence and testimony from lay witnesses regarding Plaintiff's lost income. Defendants deposed both witnesses. Accordingly, Plaintiff's motion to preclude evidence of lost income is **DENIED**.

### (2) *Testimony of Michael Zabel (ECF No. 190)*

Defendants have filed a motion (ECF No. 190) to exclude testimony of Defendants' attorney Michael Zabel. Plaintiff recently filed his pre-trial witness list in which he noticed his intend to call Defendants' attorney, Michael Zabel, to testify regarding his conversation with Luke French. (*See* ECF No. 183 at 8). Defendants assert that such testimony is inadmissible because it violates the attorney-client privilege. (ECF No. 190 at 3). In response, Plaintiff argues that the testimony is admissible because French's

3

conversation with Zabel was not for the purpose of seeking legal advice and, furthermore, was disclosed to Plaintiff's counsel and therefore cannot be covered under the attorney-client privilege. (ECF No. 210 at 4).

The attorney-client privilege is one of the oldest privileges for confidential communications known to the law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.; see also Nesselrotte v. Allegheny Energy, Inc.*, 242 F.R.D. 338, 340 (W.D. Pa. 2007). Under Rule 501 of the Federal Rules of Evidence, a district court exercising diversity jurisdiction applies the law of privilege from the state in which it sits. *Samuelson v. Susen*, 576 F. 2d 546, 549 (3d Cir. 1978). Pennsylvania defines the attorney-client privilege by statute:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. Cons. Stat. Ann. § 5928; *see also Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 284 (E.D. Pa. 2002).

The Third Circuit has explained the required elements to establish the attorney-client privilege under Pennsylvania law as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an

4

opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Montgomery Cnty. v. MicroVote Corp.*, 175 F. 3d 296, 301 (3d Cir. 1999); *Kephart v. ABB, Inc.*, No. 2:12-cv-668, 2014 WL 1452020, at *3-5 (W.D. Pa. Apr. 14, 2014); *see also In re Grand Jury Proceeding Impounded*, 241 F. 3d 308, 316 n. 6 (3d Cir. 2001) (Communications are protected under the attorney-client privilege when: (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived.).

Similar to the attorney-client privilege is the work-product doctrine. *Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 301 (W.D. Pa. 2011). The work-product doctrine is governed by federal law, even in diversity cases. *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 244 (W.D. Pa. 2007). In *Hickman v. Taylor*, the Supreme Court examined the work-product doctrine and adopted "the general policy against invading the privacy of an attorney's course of preparation." *Hickman v. Taylor*, 329 U.S. 495, 512, (1947). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Rule 26(b)(3) of the Federal Rules of Civil Procedure sets forth the work-product doctrine as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another

5

party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A). However, those materials may be discovered if they are otherwise discoverable under Rule 26(b)(1) *and* the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

A document is considered to be prepared "in anticipation of litigation [when] in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F. 2d 798, 803 (3d Cir. 1979). Work product is discoverable only if the moving party makes a showing of substantial need and undue hardship. *Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 318 (E.D. Pa. 1995).

Under both the attorney-client privilege and the work-product doctrine, the party asserting the privilege and resisting discovery—here, the Defendant—bears the burden of demonstrating that the privilege acts as a bar to discovery. *Robinson v. Countrywide Home Loans, Inc.*, No. 08–cv–1563, 2010 WL 4737816, at * 1 (W.D. Pa. Nov.16, 2010); *see also In re Grand Jury*, 603 F. 2d 469, 474 (3d Cir. 1979) (citing *United States v. Landof*, 591 F. 2d 36, 38 (9th Cir. 1978)) ("'The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege.'").

To determine whether the attorney-client privilege applies to a particular communication, the threshold inquiry is "whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *In*

6

*re Spalding*, 203 F. 3d 800, 805 (Fed. Cir. 2000) (citations omitted). In other words, there must be the existence of an attorney-client relationship. The existence of an attorney-client relationship does not necessarily depend upon the payment of fees or upon the execution of a formal contract. *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F. 2d 1311 (7th Cir. 1978). Rather, the existence of the privilege depends upon the attempt by a party to secure some legal advice or to procure some legal services. *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 392 (W.D. Pa. 2005)

Under the attorney-client privilege, confidential communications between an attorney and client are privileged from disclosure. Nevertheless, communications made in the known presence of a third party are typically not privileged. *See United States v. Morris*, No. 07-cr-20, 2008 WL 5188826, at *22 (W.D. Pa. Dec. 8, 2008); *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 244-45 (W.D. Pa. 2007).

Here, the Court will exclude the testimony of Defendants' counsel, Michael Zabel, under the attorney-client privilege. The conversation between Zabel and French constitutes a communication between an attorney and his client, as French is an employee of Defendant R&L and the conversation was made in anticipation of the present litigation. The conversation meets all of the requirements for attorney-client privilege set forth in detail above. Further, the Court finds that the attorney-client privilege was not waived when Attorney Zabel sent a letter to Plaintiff's counsel. The fact that Zabel wrote a letter to Plaintiff's counsel stating that French had no knowledge of the accident does not waive the privilege and expose all communications between Zabel and French. Accordingly, for

these reasons, Defendants' motion to preclude the testimony of Michael Zabel is **GRANTED**.

### (3) *Testimony of Jeffrey Wade (ECF No. 193)*

Defendants have filed a motion (ECF No. 193) to exclude the testimony of Jeffrey Wade, General Counsel for Defendants. Plaintiff recently filed his pre-trial witness list in which he listed Jeffrey Wade, who will testify regarding his interaction with Plaintiff's investigator, Jeffrey Jones, about Wade's internal investigation of the accident. (*See* ECF No. 183 at 6). Defendants contend that Wade's testimony is irrelevant and prejudicial under Rules 401 and 403. (ECF No. 193 at 2). Defendants also assert that Wade's testimony is inadmissible because it violates the attorney-client privilege and the work-product doctrine. (*Id.* at 4).

As explained by Plaintiff, "Mr. Jones was the investigator retained by Plaintiff's prior counsel to attempt to locate the R&L driver involved in Plaintiff's accident." (ECF No. 208 at 1). At some point in time after the accident, Mr. Jones interacted with Mr. Wade in the course of his investigation. Defendants now seek to preclude any testimony by Mr. Wade concerning the conversations that he had with Mr. Jones.

First, Defendants assert that Wade's testimony is not relevant and is unfairly prejudicial because "the testimony is designed to support a claim that R&L attempted to hide the identity of Mr. Mead." (ECF No. 193 at 3, ¶ 14). Rule 403 provides, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading

8

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. To determine whether the evidence is unfairly prejudicial, the Court must balance "the probative value of and need for the evidence against the harm likely to result from its admission." Fed. R. Evid. 403 advisory committee's note. Thus, the Court may exclude relevant evidence if its "probative value is substantially outweighed by the risk of undue prejudice." *U.S. v. Scarfo*, 850 F. 2d 1015, 1019 (3d Cir. 1988). As Defendants note, this Court has already decided a motion in limine precluding any testimony or evidence related to the delay in Mead's identification as unfairly prejudicial. (*See* ECF No. 205 at 11). In accordance with the Court's previous order (ECF No. 205) on Defendants' motion in limine (ECF No. 135) to exclude testimony and argument that R&L improperly concealed Clark Mead's identity, Plaintiff is not permitted to elicit such testimony from Mr. Wade.

Nevertheless, Mr. Wade will be permitted to testify concerning his conversations with Mr. Jones to the extent that such testimony is not presented by Plaintiff to argue that R&L attempted to conceal Mr. Mead's identity. Under the Federal Rules of Evidence, evidence must be relevant to be admissible at trial. *See* Fed. R. Evid. 402 (stating that relevant evidence is admissible while irrelevant evidence is not admissible). Rule 401 defines the test for relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Mr. Wade's conversations with Mr. Jones are relevant to show Mr. Mead's conduct at the time of the accident and following the accident and to show R&L's involvement in the accident's aftermath.

9

Defendants also contend that Mr. Wade's testimony is protected under the work-product doctrine and attorney-client privilege as Mr. Wade was general counsel for R&L at the time that he interacted with Mr. Jones. The Court has set forth the legal standards for both the work-product doctrine and attorney-client privilege in detail in the section above. Here, Mr. Wade's interactions and conversations with Mr. Jones are not covered by either the work-product doctrine or the attorney-client privilege. Importantly, Mr. Jones was not a client of Mr. Wade, nor did the conversations involve legal advice or an attempt to procure some legal services. However, to the extent that Plaintiff intends to question Mr. Wade about his internal investigation, his conversations with his clients, and his notes and other documents created in anticipation of this litigation, the Court will evaluate whether such testimony is protected by either the work-product doctrine or attorney-client privilege at the time of trial. The record presently before the Court is not sufficient to make such a determination.

Accordingly, Defendants' motion to preclude the testimony of Jeffrey Wade is **DENIED** to the extent that Plaintiff may question Mr. Wade concerning his non-privileged conversations with Mr. Jones. However, Plaintiff will not be permitted to elicit testimony from Mr. Wade that is protected by the work-product doctrine or attorney client privilege. Furthermore, in accordance with this Court's previous order (ECF No. 205), Plaintiff is not permitted to elicit testimony from Mr. Wade that R&L attempted to conceal Clark Mead's identity.

### *(4) Defendants' Responses to Requests for Admissions (ECF No. 199)*

Defendants have filed a motion (ECF No. 199) to preclude evidence of Defendants' responses to Plaintiff's request for admissions. On October 21, 2011, Plaintiff served his requests for admissions on Defendants. (*Id.*). Requests for admissions numbers 1 through 5 ask Defendants to admit that no R&L driver was at the scene of Plaintiff's accident, as follows:

1. Defendant R&L Carriers, Inc. admits that it did not have a driver that was driving a R&L tractor and pulling twin pup trailers and driving westbound on Interstate I-80 in Clearfield County on July 14, 2009.

2. Defendant R&L Carriers, Inc. admits that it did not have one of its drivers pulling an R&L tractor and twin pup trailers driving westbound on Interstate I-80 at Mile Marker 127 at 12:35 a.m.

3. Defendant R&L Carriers, Inc. admits that no driver or employee of Defendant R&L Carriers, Inc. was at Mile Marker 127 on Interstate I-80 westbound at approximately 12:35 a.m. on July 14, 2009.

4. Defendant R&L Carriers, Inc. admits that there was not an R&L driver at the accident scene involving William Prescott on the morning of July 14, 2009 at approximately 12:35 a.m. on Interstate I-80 westbound at or near Mile Marker 127.

5. Defendant R&L Carriers, Inc. admits that it did not dispatch one of its drivers to drive a tractor/trailer on a route that would proceed westbound on Interstate I-80 through Bradford Township, Clearfield County on July 14, 2009.

(*See* ECF No. 199-1 at 3). On August 10, 2012, Defendants responded with the following statement to each of these five requested admissions: "Admitted based upon information known to date. Answering Defendants reserve the right to supplement or amend their response as necessary." (*Id.* at 11-12).

During its subsequent investigation, Defendants discovered that one of R&L's drivers, Clark Mead, was present at the scene of the accident. Defendants informed Plaintiff of this fact on January 3, 2013, and the parties further developed this fact in subsequent discovery. Defendants now contend that Plaintiff intends to introduce these admissions into evidence, but that such evidence is irrelevant under Rule 401 and prejudicial under Rule 403. (ECF No. 199 at 3-4). Specifically, Defendants argue that Plaintiff intends to use the admissions to support his claim that R&L attempted to hide the identity of Clark Mead.

Plaintiff contends that Defendants should be held to their original admissions because Defendants have not filed a motion to amend or withdraw their admissions pursuant to Rule 36(b). Plaintiff is correct in noting that Rule 36 governs the amendment of admissions. *See Altman v. Ingersoll-Rand Co.*, No. 05-cv-956, 2008 WL 596066, at *3 (W.D. Pa. Mar. 4, 2008) ("Pursuant to Rule 36(b), an admitted matter is conclusive unless the Court permits the withdrawal or amendment of the admission."). However, the Court need only determine whether the content of the original admission is admissible under the rules of evidence, not whether Defendants may properly withdraw or amend their admissions under Rule 36 of the Federal Rules of Civil Procedure, as no such motion is presently before the Court.

Evidence must be relevant to be admissible at trial. *See* Fed. R. Evid. 402 (stating that relevant evidence is admissible while irrelevant evidence is not admissible). Rule 401 defines the test for relevant evidence as evidence that "has any tendency to make a fact

more or less probable than it would be without the evidence." Fed. R. Evid. 401. However, even relevant evidence may be excluded under Rule 403:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

This Court has already granted Defendants' motion in limine to exclude the argument that R&L concealed Clark Mead's identity, finding any testimony or evidence related to the delay in Mead's identification is irrelevant and prejudicial. (*See* ECF No. 205 at 10-11). Plaintiff's proposed use of the admissions at issue here must be excluded for the same reason. Defendants initial admissions that no R&L driver was present at the scene of Plaintiff's accident appears to have been based on the information available to Defendants at that time. Defendants were careful to qualify their admissions by reserving the right to revise the admissions as more information became available. Once Defendants became aware that one of their drivers, Clark Mead, was indeed present at the scene of the accident, Defendants made that information known to Plaintiff and the parties conducted discovery in accordance with that information.[2]

As such, permitting Plaintiff to use the original admissions to argue that Defendants concealed information would confuse the jury from the ultimate issue in this case and would be unduly prejudicial to Defendants under Rule 403. Accordingly, the

---

[2] The Court is aware that Clark Mead died before he could be deposed and that discovery related to Mead's actions at the time of the accident are thus limited to the observations of other individuals.

13

Court will preclude Plaintiff from introducing Defendants' responses to Plaintiff's requests for admissions numbers 1 through 5. Such a result embraces the purpose behind Rule 36(b). *See Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 123 F.R.D. 97, 103 (D. Del. 1988) ("Rule 36(b) emphasizes 'the importance of having an action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not prejudice him.'") (quoting Advisory Committee's Notes to the 1970 Amendments of Rule 36). Defendants' motion to exclude Defendants' responses to Plaintiff's requests for admissions is therefore **GRANTED**.

### (5) *Plaintiff's Motion to Quash (ECF No. 206)*

Plaintiff has filed a motion (ECF No. 206) to quash Defendants' notice of intent to serve record subpoenas for phone records on Verizon Wireless and US Cellular. Plaintiff argues that Defendants' subpoenas for the phone records are untimely, given that discovery has closed and that trial in this matter is fast approaching. (ECF No. 206 at 2). In response, Defendants contend that Plaintiff lacks standing to challenge the subpoenas at issue. (ECF No. 212).

This Court has previously addressed a number of similar motions in this case. Like before, the Court finds that Plaintiff lacks standing to quash the subpoenas served on third-parties Verizon Wireless and US Cellular. And, like before, Plaintiff has not asserted a property right or privilege in the subpoenaed documents to demonstrate that an exception should apply to the general rule that "a party does not have standing to quash a subpoena served on a third party." *See Fiorentino v. Cabon Oil & Gas Corp.*, No.

3:09-cv-2284, 2011 U.S. Dist. LEXIS 119292, at *7 (E.D. Pa. Oct. 14, 2011). Therefore, Plaintiff's motion to quash Defendants' notice of intent to serve record subpoenas for cell phone records is **DENIED**.

*(6) Conclusion*

Accordingly, upon consideration of the parties' filings in this matter, **IT IS HEREBY ORDERED** that, in accordance with the foregoing analysis, the motions are **GRANTED in part** and **DENIED in part** as follows:

1. Defendants' motion (ECF No. 191) to preclude evidence of lost income is **DENIED** to the extent that such evidence does not require expert testimony.

2. Defendants' motion (ECF No. 190) to preclude the testimony of Michael Zabel is **GRANTED**.

3. Defendants' motion (ECF No. 193) to preclude the testimony of Jeffrey Wade is **DENIED** to the extent that Plaintiff may elicit testimony from Mr. Wade concerning his non-privileged conversation with Mr. Jones.

4. Defendants' motion (ECF No. 199) to preclude evidence of Defendants' August 10, 2012, responses numbers 1 through 5 to Plaintiff's requests for admissions is **GRANTED**.

5. Plaintiff's motion (ECF No. 206) to quash Defendants' notice of intent to serve record subpoenas for phone records is **DENIED**.

15

**IT IS FURTHER ORDERED** that, to the extent the parties' motions seek additional relief, those requests are **DENIED** at this time.

**IT IS SO ORDERED** this 10th day of June 2015.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**