IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA A. BENNETT, Executrix of the | ) | |
| Estate of WILLIAM M. PRESCOTT, | ) | |
| | ) | Civil Action No. 3:11-203 |
| Plaintiff, | ) | |
| v. | ) | Judge Kim R. Gibson |
| | ) | |
| R&L TRANSFER, INC., GREENWOOD | ) | |
| MOTOR LINES d/b/a R&L CARRIERS, | ) | |
| and R&L CARRIERS SHARED SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

I.    **Introduction**

This matter comes before the Court upon two pretrial motions: (1) a motion to compel the deposition of Dr. Joseph M. Kosakoski, Jr. (ECF No. 241) by Defendants R&L Transfer, Inc., Greenwood Motor Lines d/b/a R&L Carriers, and R&L Carriers Shared Services LLC (collectively, "Defendants" or "R&L") and (2) Plaintiff's motion for sanctions (ECF No. 226). Plaintiff has filed a response and a supplemental response in opposition to Defendants' motion to compel the deposition of Dr. Kosakoski. (ECF Nos. 243; 244.) The parties have fully briefed Plaintiff's motion for sanctions, (*see* ECF Nos. 226; 234; 235; 236), and both pretrial motions are now ripe for disposition. For the reasons that follow, Defendants' motion to compel the deposition of Dr. Kosakoski will be granted, and Plaintiff's motion for sanctions will be denied.

## II.     Jurisdiction and Venue

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  Venue is proper under 28 U.S.C. § 1391.

## III.     Background

In July 2009, William M. Prescott was working as a self-employed independent truck driver for FedEx Ground.  (ECF No. 99-3 at 70.)  Prescott's daily route required him to pull two twin-trailers (also known as "twin pups") along a stretch of I-80 between the FedEx terminal in Lewisbury, Pennsylvania, and a turn-around point in Emlenton, Pennsylvania.  (*Id*. at 70-71, 74-75.)  Prescott would switch trailers with another driver in Emlenton and return home along the same route.  (*Id*. at 71.)

At approximately 12:35 a.m. on the night of July 14, 2009, Prescott was driving his standard route west on I-80 towards Emlenton.  (ECF No. 98-1 at 127, 133, 137.)  Clark Mead ("Mead"), a driver for R&L, was operating a green R&L truck in the immediate vicinity of Prescott's vehicle.  (ECF No. 99-8; ECF No. 99-18.)  Two other commercial drivers, Stephen Page ("Page") and David Desrosiers ("Desrosiers"), were traveling west on I-80 some distance behind Mead and Prescott.  (ECF No. 99-1 at 10-11; ECF No. 99-2 at 7-8.)

According to Prescott, he was driving at a speed of approximately sixty or sixty-five miles per hour in the right-hand lane when he noticed a green tractor with white trailers (subsequently identified as the vehicle driven by Mead) approaching on the left in an attempt to pass.  (ECF No. 98-1 at 135-36.)  Prescott testified at his deposition that the

green truck began to merge back into the right lane before it had completely cleared Prescott's vehicle, forcing Prescott off the highway. (*Id*. at 136.) Prescott hit his head and lost consciousness as he left the road, and he has no other recollection of the events of that night. (*Id*. at 136-37; ECF No. 99-3 at 17-20.)

Immediately prior to the accident, Page and Desrosiers were driving in tandem approximately one half of a mile behind Mead and Prescott. (ECF No. 99-1 at 15-16, 19; ECF No. 99-2 at 17.) Page, traveling in the lead, testified that he and Desrosiers had been following the two vehicles for several miles and were slowly gaining ground. (ECF No. 99-1 at 16.) Page observed that the trucks belonging to Prescott and Mead were traveling with one in front of the other, rather than side by side, although he could not tell which lane they were in. (*Id*. at 18-19.) Neither Page nor Desrosiers ever saw Mead's truck change lanes or attempt a passing maneuver, although each acknowledged losing visual contact with the vehicles on occasion due to the twists and turns of the road. (*Id*. at 24-28; ECF No. 99-2 at 85, 88, 91.)

While approaching the site of the accident, Page had a clear view of Mead's vehicle. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 51-53, 95-96.) Page saw Mead suddenly engage the hazard lights on his truck and slowly pull off to the right side of I-80. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 101-02.) Page testified that he had a direct line of sight to Mead's vehicle both immediately before and after Mead engaged his hazard lights. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 51-53, 95-96.) Page suspected that Mead's truck had blown a tire and prepared to pull over to offer assistance. (ECF No. 99-1 at 74.) As he pulled over, Page observed Prescott's truck in flames at the

bottom of the embankment. (*Id*. at 29-30, 89.) Page had not seen Prescott's vehicle leave the road and had assumed that the truck in front of Mead had simply continued on along I-80. (*Id*. at 74.)

Page parked his truck several hundred yards in front of Mead's R&L truck and jumped down the embankment to render assistance to Prescott. (*Id*. at 34-36.) Page opened the door of Prescott's vehicle and removed Prescott from the cab. (*Id*. at 36-37.) He then called to Desrosiers and Mead for assistance, and the three men pulled Prescott away from his burning vehicle. (*Id*. at 38-40, 93-94.) Page observed that Prescott had suffered severe burns and injuries all over his face and arms. (*Id*. at 37-39.) After removing Prescott from his vehicle, Page did not leave Prescott's side at any point until medical personnel arrived. (*Id*. at 97.)

While waiting for medical help to arrive, Prescott slipped in and out of consciousness. (*Id*. at 95, 98-100.) Page testified that it "took him a little bit, and then he seemed to come out of it and asked: what's happening? What's going on? And – and he cried about his truck, and – and we talked to him." (*Id*. at 40-41.) Page asked Prescott how the accident had occurred, and Prescott said he did not know what had happened. (*Id*. at 100.) Emergency medical responders similarly indicated that Prescott expressed no recollection as to what had happened before or after the accident. (ECF No. 99-6 at 36-37, 47; ECF No. 99-7 at 1; ECF No. 99-32 at 1.) However, Desrosiers testified that Prescott blurted out the following statement shortly after being pulled from his truck: "I was cut off, I was cut off. My tractor, my tractor was cut off." (ECF No. 99-2 at 23-24.)

At some point after Prescott was removed from his vehicle, Desrosiers instructed Mead to move his truck to make room for emergency responders. (*Id*. at 16.) Mead re-entered his vehicle and left the scene, continuing his route along I-80. (*Id*. at 26-27; ECF No. 99-18.) Neither Page nor Desrosiers saw Mead leave. (ECF No. 99-1 at 108-09; ECF No. 99-2 at 78, 109.)

Two Pennsylvania State Troopers eventually arrived on the scene. (ECF No. 99-1 at 44-45; ECF No. 99-2 at 30.) Trooper Richard L. Magnuson conducted an investigation and observed that there was no evidence that Prescott's vehicle braked suddenly or took any evasive action. (ECF No. 99-22 at 83.) Trooper Magnuson also noted that Prescott's vehicle had left the road near the crest of a hill where the road curved away to the left. (*Id*. at 48.) Based on this evidence, Trooper Magnuson concluded that Prescott had been involved in a single-vehicle accident and cited Prescott for driving too fast for conditions in violation of 75 Pa.C.S. § 3361. (*Id*. at 76-77; 85-87; ECF No. 99-4.) Although Trooper Magnuson took statements from Page and Desrosiers, neither of them mentioned anything about Prescott having been cut off by Mead.[1] (ECF No. 99-1 at 44-45; ECF No. 99-2 at 28, 30, 33-35.) Trooper Magnuson could not obtain a statement from Mead because he had already left the scene.[2]

After the accident, Prescott was hospitalized until November 25, 2009. (ECF No. 99-35; ECF No. 99-36; ECF No. 99-40; ECF No. 99-41.) His daughter, Barbara Bennett ("Bennett" or "Plaintiff"), testified that Prescott woke up one day from a "four month

---

[1] Desrosiers also failed to mention Prescott's purported dying declaration when interviewed by a forensic investigator approximately one year later. (ECF No. 99-19.)

[2] Mead passed away from an illness before his deposition could be taken.

coma" and spontaneously stated, "Barbara, don't worry about your driving, worry about

that man in the green truck because he sucked me up and pushed me off the road." (ECF

No. 103-22 at 4.) A friend of Bennett's, Andrea Wise, testified that she overheard the same

statement from Prescott. (ECF No. 98-5 at 47.) Despite Bennett's testimony that Prescott

was in a coma for four months, medical records and posts from a blog maintained by

Prescott's family suggest that Prescott was frequently conscious and alert throughout his

hospitalization. (ECF No. 99-36; ECF No. 99-37.)

On August 19, 2011, Prescott initiated the instant action by filing a complaint in

the Court of Common Pleas of Clearfield County, Pennsylvania. (ECF No. 1-2.) The

complaint was removed to this Court on September 8, 2011. (ECF No. 1.) The discovery

deadline in this case ended on January 6, 2014, and the depositions of all expert witnesses

were to be completed by April 2, 2014. (ECF No. 77.) On September 24, 2015, Prescott's

counsel filed a statement noting Prescott's death. (ECF No. 227.) Prescott's counsel filed a

motion to substitute Bennett, the Executrix of Prescott's estate, as Plaintiff, (ECF No. 228),

which the Court granted, (ECF No. 231). Trial in this matter is currently scheduled to

commence on January 19, 2016. (ECF No. 238.)

## IV. Applicable Law

### A. Motion to Compel Discovery, Rule 26

Generally, materials that are relevant to an issue in a case are discoverable unless

they are privileged. Rule 26 explains the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as
> follows: Parties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). While the scope of discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Indeed, Rule 26(b)(1) imposes "two content-based limitations upon the scope of discovery: privilege and relevance." *Trask v. Olin Corp.*, No. 12-CV-340, 2014 U.S. Dist. LEXIS 28362, at *40 (W.D. Pa. 2014).

Even relevant discovery may be limited by a court "if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." *Id.* at *41 (citing FED. R. CIV. P. 26(b)(2)(C)). "In evaluating whether a party is entitled to discovery, the trial court should not simply rule on some categorical imperative, but should consider all the circumstances of the pending action." *Id.* at *44.

Pursuant to Rule 26, a party "must disclose" to the other parties the identity of any expert witness it may use at trial to present evidence. FED. R. CIV. P. 26(a)(2)(A). "A party may depose any person who has been identified as an expert whose opinions may be presented at trial." FED. R. CIV. P. 26(b)(4)(A). In instances where an expert report is required, "the deposition may be conducted only after the report is provided." *Id.*

To modify a scheduling order, a party must demonstrate "good cause." FED. R. CIV. P. 16(b)(4). The "good cause" inquiry "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). In the context of requests to extend deadlines, courts have defined "good cause" to include "circumstances beyond the control" of a party. *See Partners Coffee Co., LLC v. Oceana Servs. and Prods. Co.*, No. 09-CV-236, 2010 U.S. Dist. LEXIS 41695, at *10 (W.D. Pa. Apr. 28, 2010); *see also Lord v. Consolidated Rail Corp.*, No. 13-784, 2015 U.S. Dist. LEXIS 142119 (D.N.J. Oct. 19, 2015) ("A court may find good cause to amend the scheduling order where the movant learns of the facts supporting [the motion] after expiration of the relevant filing deadline[.]") (internal quotations omitted). In the context of requests to reopen discovery, "[t]he decision whether to reopen discovery is committed to the sound discretion of the district court." *LeBoom v. Lancaster Jewish Cmty. Ass'n*, 503 F.3d 217, 235 (3d Cir. 2007).[3]

### B.    Motion for Sanctions, Rule 11

Federal Rule of Civil Procedure 11 provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> *        *        *
>
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

---

[3] Although Defendants do not indicate that they seek to reopen discovery and extend the discovery deadlines, the Court interprets their motion as such because the deadline for discovery ended on January 6, 2014, and the depositions of all expert witnesses were to be completed by April 2, 2014. (ECF No. 77.)

> support after a reasonable opportunity for further investigation or discovery[.]

FED. R. CIV. P. 11(b)(3). Rule 11 further provides that a moving party must serve a motion for sanctions under Federal Rule of Civil Procedure 5 and must allow for the opposing party to take remedial action "within 21 days after service or within another time the court sets." FED. R. CIV. P. 11(c)(2)

"Rule 11 sanctions may be awarded in exceptional circumstances in order to 'discourage plaintiffs from bringing baseless actions or making frivolous motions.'" *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988)). "The Rule imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing." *Id.* (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)). "An inquiry is considered reasonable under the circumstances if it provides the party with an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Id.* (internal quotations and citation omitted).

## V. Discussion

### A. Defendants' Motion to Compel the Deposition of Dr. Kosakoski

In support of their motion to compel Dr. Kosakoski's deposition, Defendants assert that Plaintiff designated Dr. Kosakoski as an expert witness on April 6, 2015, and stated that he would testify "'in accordance with his expert report'" regarding "'the cognitive issues [Prescott] suffered secondary to his motor vehicle accident.'" (ECF No.

241 ¶ 1 (quoting ECF No. 183 at 9-10).) Plaintiff produced Dr. Kosakoski's expert report

on August 7, 2015, wherein Dr. Kosakoski opined that Prescott's frontotemporal dementia

would render him "unable to effectively participate in his trial proceedings" and that

Prescott lacked "the cognitive capacity to accurately, intelligently, and reliably respond to

any questioning that may be directed to him." (*Id.* ¶ 2; ECF No. 241-1 at 3-4.) Defendants

state that they "[i]mmediately . . . raised concerns and objections about these conclusions

and questioned when these competency issues developed," (ECF No. 241 ¶ 3), and that

Plaintiff's counsel represented to the Court that he was "'making extensive efforts'" to

schedule Dr. Kosakoski's deposition, (*id.* ¶ 6 (quoting ECF No. 226 ¶ 19)).

Defendants contend that Plaintiff, after representing that her witness list was

current on December 14, 2015, filed an amended witness list on December 18, 2015,

wherein all references to Dr. Kosakoski's expert report have been removed, and Dr.

Kosakoski's testimony is characterized as regarding the "'sequelae'" of Prescott's injuries,

rather than his cognitive issues. (*Id.* ¶¶ 9-10 (quoting ECF No. 240 at 7).) Defendants

argue that they should be permitted to question Dr. Kosakoski about Prescott's mental

condition prior to, and at the time of, his March 19, 2013, deposition. (*Id.* ¶ 13.)

Specifically, Defendants assert that Prescott suffered a "steady mental digression [sic]"

from as early as 2009 that "may have rendered him incompetent before his deposition."

(*Id.* ¶ 14.) Defendants summarize Prescott's medical history, (*id.* ¶¶ 15-41), and assert that

"[w]ell before [Prescott's] deposition on March 19, 2013, Dr. Kosakoski had already

diagnosed [him] with frontal lobe syndrome, traumatic brain injury, cognitive

dysfunction, oppositional defiant disorder, disruptive behavior disorder, daily

temperamental extremes, low frustration tolerance, and an increased risk of developing dementia," (*id.* ¶ 42). Defendants emphasize that Prescott fell four months before his deposition, suffering "'uncertain trauma to the head,'" and fell again just two days before his deposition. (*Id.* ¶¶ 43-44 (quoting ECF No. 241-2 at 12).) Defendants therefore assert that Prescott's competency at the time of his deposition "is a legitimate and necessary line of inquiry" because they will seek to renew their motion for summary judgment if Dr. Kosakoski's deposition suggests that Prescott was incompetent at the time of his deposition. (*Id.* ¶¶ 46, 50.)

In response, Plaintiff argues that discovery should not be reopened because Prescott was deposed twenty-nine months ago, but Defendants did not raise the issue of his competency until August 2015. (ECF No. 243 at 2, 5-6, 12-13.) Plaintiff also asserts that the deposition of Dr. Kosakoski is unnecessary because Defendants' expert witness, Dr. Richard Bennett, found Prescott to be competent in June 2013 after reviewing his medical records and deposition testimony. (*Id.* at 2-4, 15.) In her supplemental response, Plaintiff states that Defendants included Prescott on their witness list and filed designations of Prescott's deposition testimony in April 2015. (ECF No. 244 at 1-2.) Because Defendants did not challenge Prescott's competency in April 2015, Plaintiff asserts that their motion to compel Dr. Kosakoski's testimony must be denied. (*Id.*)

Pursuant to this Court's Order, Plaintiff's expert reports were required to be filed by February 17, 2014, and the depositions of all experts were required to be completed by April 2, 2014. (ECF No. 77.) The parties are unable to agree when Plaintiff disclosed Dr. Kosakoski as an expert. Defendants assert that Plaintiff did not designate Dr. Kosakoski

as an expert until April 6, 2015, (ECF No. 241 ¶ 1), and Plaintiff contends that she disclosed Dr. Kosakoski as an expert on January 23, 2014, when she wrote a letter to Defendants' counsel enclosing Dr. Kosakoski's "report and Curriculum Vitae," (*see* ECF No. 243 at 6, 18; *see also* ECF 226-2 at 74-76).

The Court need not address the parties' arguments regarding when Defendants learned that Dr. Kosakoski may serve as an expert witness. The Court's thorough examination of the record reveals that Plaintiff included Dr. Kosakoski as an expert witness on her witness list and that Dr. Kosakoski prepared expert reports. Pursuant to Rule 26, "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." FED. R. CIV. P. 26(b)(4)(A). Although Plaintiff may not present Dr. Kosakoski as an expert at trial, given that she has removed all references to Dr. Kosakoski's expert report in her amended witness list, (ECF No. 240 at 7), she has previously designated him as an expert, and he prepared expert reports. Under the circumstances now existing in this case, Defendants are entitled to depose Dr. Kosakoski, pursuant to Rule 26(b)(4)(A), and the Court finds that good cause exists to reopen discovery and extend the discovery deadline.

Moreover, the Court further notes that Plaintiff's motion in limine to permit Prescott's deposition testimony to be read during trial is pending. (*See* ECF Nos. 219; 239.) After Plaintiff filed her initial motion in limine, Defendants responded and asserted that they are entitled to depose Dr. Kosakoski to assess whether Prescott was competent when he testified at his deposition. (ECF No. 223 at 4.) Following Prescott's death, the Court directed Plaintiff to address these changed circumstances in relation to her motion

in limine.  (ECF No. 237 at 2.)  Plaintiff renewed her motion in limine to permit Prescott's deposition testimony to be read during trial on December 18, 2015, (ECF No. 239), and Defendants must file their response by December 31, 2015, (ECF No. 247).  To fully address the parties' arguments regarding whether Prescott was incompetent at the time of his deposition, the Court must review Dr. Kosakoski's deposition testimony regarding Prescott's condition at that time.  The Court therefore finds that good cause exists to reopen discovery and extend the discovery deadline for the limited purpose of allowing Defendants to depose Dr. Kosakoski.  The parties shall complete Dr. Kosakoski's deposition by January 8, 2016, and Defendants shall file a transcript of the deposition by January 13, 2016, so that the Court may decide Plaintiff's motion in limine before trial commences on January 19, 2016.

### B.      Plaintiff's Motion for Sanctions

Plaintiff argues that her motion for sanctions must be granted because Defendants' response in opposition to her motion in limine to read the deposition testimony of Prescott was "riddled with known factual misrepresentations that are directly contradicted by Defendants' own expert and the factual record."  (ECF No. 226 at 1.) Specifically, Plaintiff asserts that Defendants made three factual misrepresentations in their response:  (1) Defendants stated that Prescott was incompetent at his March 19, 2013, deposition, (*id.* ¶ 5); (2) Defendants incorrectly stated that Plaintiff did not produce in discovery two letters from Dr. Kosakoski, (*id.* ¶ 12); and (3) Defendants claimed that they were attempting to schedule Dr. Kosakoski's deposition, (*id.* ¶ 18).  In support thereof,

Plaintiff states that Defendants' expert, Dr. Bennett, found Prescott to be competent as of June 26, 2013, only three months after his deposition, and that Defendants questioned Prescott regarding his competency at the deposition. (*Id.* ¶¶ 5-11.) Plaintiff contends that she produced Dr. Kosakoski's December 20, 2012, letter to Defendants' counsel on January 23, 2014, and that she produced Dr. Kosakoski's August 4, 2015, letter to Defendants' counsel on August 7, 2015. (*Id.* ¶¶ 12-17; ECF 226-2 at 74-76.) Finally, Plaintiff asserts that she "has been making extensive efforts to schedule Dr. Kosakoski's deposition and accommodate Defendants' counsel's schedule." (ECF No. 226 ¶¶ 18-20.)

In response, Defendants state that they advanced the following good-faith arguments in response to Plaintiff's motion in limine to read Prescott's deposition testimony: (1) the Court must determine Prescott's mental capacity as a question of fact; (2) Defendants were entitled to discovery regarding Prescott's competency and ability to testify at trial; and (3) the Court must determine whether Prescott's mental incompetency developed before his March 19, 2013, deposition. (ECF No. 234 at 2.) Defendants explain that they learned that Plaintiff did produce the December 20, 2012, letter from Dr. Kosakoski and notified Plaintiff on September 22, 2015, that they were incorrect in making the assertion that they had not received it. (*Id.*; ECF No. 234-2 at 19.) That same day, Defendants also notified the Court to correct their response in opposition to Plaintiff's motion in limine. (ECF No. 234 at 3; ECF No. 234-2 at 22.) Defendants note that despite their efforts to correct the record, Plaintiff filed her motion for sanctions the following day, on September 23, 2015. (ECF No. 234 at 3; ECF No. 226.)

Defendants argue that Plaintiff's motion is moot and meritless. Regarding mootness, Defendants assert that, after Prescott's death, they requested that Plaintiff withdraw her motion in limine and motion for sanctions as moot. (ECF No. 234 at 3-4; ECF No. 234-2 at 27.) Defendants argue that Plaintiff's motion in limine is moot because "[t]here is no longer any factual or legal issue regarding [Prescott's] ability to attend the trial." (ECF No. 234 at 4.) Because Plaintiff's motion for sanctions is based upon Defendants' response to a moot issue, Defendants assert that her motion for sanctions is also moot. (*Id.* at 5.) As noted above, however, Defendants now challenge Prescott's competency during his deposition and intend to renew their motion for summary judgment if Prescott was incompetent during his deposition. Plaintiff's motion in limine is therefore not moot, and the Court will issue a decision on that motion after receiving a transcript of Dr. Kosakoski's deposition. The Court therefore need not address Defendants' mootness argument.

Regarding the merit of Plaintiff's motion for sanctions, Defendants first argue that they were entitled to raise the issue of whether and when Prescott became incompetent after Plaintiff raised the issue of his competency in her motion in limine. (*Id.* at 6.) Defendants also note that they attached medical records to their response to Plaintiff's motion in limine that suggested Prescott suffered cognitive impairment before and after his deposition. (*Id.*) Second, Defendants reiterate that they corrected the record after learning that Plaintiff had produced the December 20, 2012, letter from Dr. Kosakoski. (*Id.* at 7.) Defendants dispute Plaintiff's contention that she produced Dr. Kosakoski's August 4, 2015, letter because discovery had closed by that date and because Plaintiff stated that

15

she produced the letter "when [she] put it in [her] motion." (*Id.*)  Finally, Defendants state that they did not "rebuff[]" efforts to schedule Dr. Kosakoski's deposition because "the parties had agreed to the deposition . . . and were attempting to schedule [it]." (*Id.* at 7-8.)  Defendants request that Plaintiff be ordered to pay the costs and fees incurred in defending Plaintiff's motion for sanctions.  (*Id.* at 8.)

In reply, Plaintiff states that she declined to withdraw her motion for sanctions because Defendants refused to concede that Prescott was competent during his deposition and declined Plaintiff's request to abandon their plan to renew their motion for summary judgment.  (ECF No. 235 at 2, 4.)  In sur-reply, Defendants reiterate that they were "entirely justified" in requesting the right to question Dr. Kosakoski regarding Prescott's competency.  (ECF No. 236 at 1.)

The Court does not find that "exceptional circumstances" exist to warrant granting Plaintiff's motion for sanctions. *Bensalem Twp.*, 38 F.3d at 1314 (3d Cir. 1994).  First, with regard to Plaintiff's argument that Defendants made a factual misrepresentation to the Court by stating that Prescott may have been incompetent at his March 19, 2013, deposition, the Court intends to grant Defendants' motion to compel the deposition of Dr. Kosakoski.  Following the deposition, the Court will consider the issue of Prescott's competence in its decision of Plaintiff's motion in limine to read Prescott's deposition testimony at trial.  Second, Defendants notified the Court that it incorrectly represented that Plaintiff did not produce Dr. Kosakoski's December 20, 2012, letter.  Moreover, Defendants did not make a factual misrepresentation warranting sanctions by stating that Plaintiff did not produce Dr. Kosakoski's August 4, 2015, letter in discovery, as the

discovery deadline expired on January 6, 2014. (ECF No. 77.) Third, the Court will not examine the issue of which party made more "extensive" efforts to schedule Dr. Kosakoski's deposition because that issue will not assist the Court in its decision of the sanctions issue. The Court will therefore deny Plaintiff's motion for sanctions and will deny Defendants' request that Plaintiff be ordered to pay the costs and fees incurred in defending Plaintiff's motion for sanctions.

**V.  Conclusion**

For the reasons set forth above, Defendants' motion to compel the deposition of Dr. Joseph M. Kosakoski, Jr. (ECF No. 241) is granted. The parties shall complete Dr. Kosakoski's deposition by January 8, 2016. Defendants shall file the transcript of Dr. Kosakoski's deposition with the Court by January 13, 2016. Plaintiff's motion for sanctions (ECF No. 226) is denied. Defendants' request that Plaintiff be ordered to pay the costs and fees incurred in defending Plaintiff's motion for sanctions is denied.

An appropriate order follows.

.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM PRESCOTT,        )
                                    )     Civil Action No. 3:11-203
              Plaintiff,     )
       v.                   )     Judge Kim R. Gibson
                                      )
R&L TRANSFER, INC., GREENWOOD   )
MOTOR LINES d/b/a R&L CARRIERS,   )
and R&L CARRIERS SHARED SERVICES, )
LLC,                               )
                                    )
            Defendants.    )

## ORDER

And now, this 29th day of December, 2015, **IT IS HEREBY ORDERED** as follows:

1. Defendants' motion (ECF No. 241) to compel the deposition of Dr. Joseph M. Kosakoski, Jr. is **GRANTED**.

   a. The parties shall complete Dr. Kosakoski's deposition by January 8, 2016.

   b. Defendants shall file the transcript of Dr. Kosakoski's deposition with the Court by January 13, 2016.

2. Plaintiff's motion (ECF No. 226) for sanctions is **DENIED**. Defendants' request that Plaintiff be ordered to pay the costs and fees incurred in defending Plaintiff's motion for sanctions is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE