# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA A. BENNETT, Executrix of the Estate of WILLIAM M. PRESCOTT, | ) ) ) |
| Plaintiff, | ) Civil Action No. 3:11-203 ) |
| v. | ) Judge Kim R. Gibson ) |
| R&L TRANSFER, INC., GREENWOOD MOTOR LINES d/b/a R&L CARRIERS, and R&L CARRIERS SHARED SERVICES, LLC, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

**I.     Introduction**

This matter comes before the Court upon two pretrial motions: (1) Plaintiff's motion in limine to read the deposition testimony of William M. Prescott at trial (ECF No. 219) and (2) Plaintiff's renewed motion in limine to read the deposition testimony of William M. Prescott at trial (ECF No. 239). Plaintiff has filed exhibits and a sur-reply in support of her motions, (*see* ECF Nos. 220, 224), and Defendants R&L Transfer, Inc., Greenwood Motor Lines d/b/a R&L Carriers, and R&L Carriers Shared Services LLC (collectively, "Defendants" or "R&L") have filed responses to Plaintiff's motions, (*see* ECF Nos. 223, 252). The pretrial motions are now ripe for disposition. For the reasons that follow, Plaintiff's first motion in limine to read the deposition testimony of William M. Prescott at trial will be denied as moot, and Plaintiff's renewed motion in limine to read the deposition testimony of William M. Prescott at trial will be granted, subject to further rulings by the Court.

**II.    Jurisdiction and Venue**

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  Venue is proper under 28 U.S.C. § 1391.

**III.    Background**

In July 2009, William M. Prescott was working as a self-employed independent truck driver for FedEx Ground.  (ECF No. 99-3 at 70.)  Prescott's daily route required him to pull two twin-trailers (also known as "twin pups") along a stretch of I-80 between the FedEx terminal in Lewisbury, Pennsylvania, and a turn-around point in Emlenton, Pennsylvania.  (*Id*. at 70-71, 74-75.)  Prescott would switch trailers with another driver in Emlenton and return home along the same route.  (*Id*. at 71.)

At approximately 12:35 a.m. on the night of July 14, 2009, Prescott was driving his standard route west on I-80 towards Emlenton.  (ECF No. 98-1 at 127, 133, 137.)  Clark Mead ("Mead"), a driver for R&L, was operating a green R&L truck in the immediate vicinity of Prescott's vehicle.  (ECF No. 99-8; ECF No. 99-18.)  Two other commercial drivers, Stephen Page ("Page") and David Desrosiers ("Desrosiers"), were traveling west on I-80 some distance behind Mead and Prescott. (ECF No. 99-1 at 10-11; ECF No. 99-2 at 7-8.)

According to Prescott, he was driving at a speed of approximately sixty or sixty-five miles per hour in the right-hand lane when he noticed a green tractor with white trailers (subsequently identified as the vehicle driven by Mead) approaching on the left in an attempt to pass. (ECF No. 98-1 at 135-36.)  Prescott testified at his deposition that the

green truck began to merge back into the right lane before it had completely cleared Prescott's vehicle, forcing Prescott off the highway. (*Id*. at 136.) Prescott hit his head and lost consciousness as he left the road, and he has no other recollection of the events of that night. (*Id*. at 136-37; ECF No. 99-3 at 17-20.)

Immediately prior to the accident, Page and Desrosiers were driving in tandem approximately one half of a mile behind Mead and Prescott. (ECF No. 99-1 at 15-16, 19; ECF No. 99-2 at 17.) Page, traveling in the lead, testified that he and Desrosiers had been following the two vehicles for several miles and were slowly gaining ground. (ECF No. 99-1 at 16.) Page observed that the trucks belonging to Prescott and Mead were traveling with one in front of the other, rather than side by side, although he could not tell which lane they were in. (*Id*. at 18-19.) Neither Page nor Desrosiers ever saw Mead's truck change lanes or attempt a passing maneuver, although each acknowledged losing visual contact with the vehicles on occasion due to the twists and turns of the road. (*Id*. at 24-28; ECF No. 99-2 at 85, 88, 91.)

While approaching the site of the accident, Page had a clear view of Mead's vehicle. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 51-53, 95-96.) Page saw Mead suddenly engage the hazard lights on his truck and slowly pull off to the right side of I-80. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 101-02.) Page testified that he had a direct line of sight to Mead's vehicle both immediately before and after Mead engaged his hazard lights. (ECF No. 99-1 at 27-29, 75-76, 84; ECF No. 99-16 at 51-53, 95-96.) Page suspected that Mead's truck had blown a tire and prepared to pull over to offer assistance. (ECF No. 99-1 at 74.) As he pulled over, Page observed Prescott's truck in flames at the

3

bottom of the embankment. (*Id*. at 29-30, 89.) Page had not seen Prescott's vehicle leave the road and had assumed that the truck in front of Mead had simply continued on along I-80. (*Id*. at 74.)

Page parked his truck several hundred yards in front of Mead's R&L truck and jumped down the embankment to render assistance to Prescott. (*Id*. at 34-36.) Page opened the door of Prescott's vehicle and removed Prescott from the cab. (*Id*. at 36-37.) He then called to Desrosiers and Mead for assistance, and the three men pulled Prescott away from his burning vehicle. (*Id*. at 38-40, 93-94.) Page observed that Prescott had suffered severe burns and injuries all over his face and arms. (*Id*. at 37-39.) After removing Prescott from his vehicle, Page did not leave Prescott's side at any point until medical personnel arrived. (*Id*. at 97.)

While waiting for medical help to arrive, Prescott slipped in and out of consciousness. (*Id*. at 95, 98-100.) Page testified that it "took him a little bit, and then he seemed to come out of it and asked: what's happening? What's going on? And – and he cried about his truck, and – and we talked to him." (*Id*. at 40-41.) Page asked Prescott how the accident had occurred, and Prescott said he did not know what had happened. (*Id*. at 100.) Emergency medical responders similarly indicated that Prescott expressed no recollection as to what had happened before or after the accident. (ECF No. 99-6 at 36-37, 47; ECF No. 99-7 at 1; ECF No. 99-32 at 1.) However, Desrosiers testified that Prescott blurted out the following statement shortly after being pulled from his truck: "I was cut off, I was cut off. My tractor, my tractor was cut off." (ECF No. 99-2 at 23-24.)

At some point after Prescott was removed from his vehicle, Desrosiers instructed Mead to move his truck to make room for emergency responders. (*Id*. at 16.) Mead re-entered his vehicle and left the scene, continuing his route along I-80. (*Id*. at 26-27; ECF No. 99-18.) Neither Page nor Desrosiers saw Mead leave. (ECF No. 99-1 at 108-09; ECF No. 99-2 at 78, 109.)

Two Pennsylvania State Troopers eventually arrived on the scene. (ECF No. 99-1 at 44-45; ECF No. 99-2 at 30.) Trooper Richard L. Magnuson conducted an investigation and observed that there was no evidence that Prescott's vehicle braked suddenly or took any evasive action. (ECF No. 99-22 at 83.) Trooper Magnuson also noted that Prescott's vehicle had left the road near the crest of a hill where the road curved away to the left. (*Id*. at 48.) Based on this evidence, Trooper Magnuson concluded that Prescott had been involved in a single-vehicle accident and cited Prescott for driving too fast for conditions in violation of 75 Pa.C.S. § 3361. (*Id*. at 76-77; 85-87; ECF No. 99-4.) Although Trooper Magnuson took statements from Page and Desrosiers, neither of them mentioned anything about Prescott having been cut off by Mead.[1] (ECF No. 99-1 at 44-45; ECF No. 99-2 at 28, 30, 33-35.) Trooper Magnuson could not obtain a statement from Mead because he had already left the scene.[2]

After the accident, Prescott was hospitalized until November 25, 2009. (ECF No. 99-35; ECF No. 99-36; ECF No. 99-40; ECF No. 99-41.) His daughter, Barbara Bennett ("Bennett" or "Plaintiff"), testified that Prescott woke up one day from a "four month

---

[1] Desrosiers also failed to mention Prescott's purported dying declaration when interviewed by a forensic investigator approximately one year later. (ECF No. 99-19.)

[2] Mead passed away from an illness before his deposition could be taken.

5

coma" and spontaneously stated, "Barbara, don't worry about your driving, worry about that man in the green truck because he sucked me up and pushed me off the road." (ECF No. 103-22 at 4.) A friend of Bennett's, Andrea Wise, testified that she overheard the same statement from Prescott. (ECF No. 98-5 at 47.) Despite Bennett's testimony that Prescott was in a coma for four months, medical records and posts from a blog maintained by Prescott's family suggest that Prescott was frequently conscious and alert throughout his hospitalization. (ECF No. 99-36; ECF No. 99-37.)

On August 19, 2011, Prescott initiated the instant action by filing a complaint in the Court of Common Pleas of Clearfield County, Pennsylvania. (ECF No. 1-2.) The complaint was removed to this Court on September 8, 2011. (ECF No. 1.) The discovery deadline in this case ended on January 6, 2014, and the depositions of all expert witnesses were to be completed by April 2, 2014. (ECF No. 77.) On September 24, 2015, Prescott's counsel filed a statement noting Prescott's death. (ECF No. 227.) Prescott's counsel filed a motion to substitute Bennett, the Executrix of Prescott's estate, as Plaintiff, (ECF No. 228), which the Court granted, (ECF No. 231). Trial in this matter is currently scheduled to commence on January 19, 2016. (ECF No. 238.)

**IV.   Applicable Law**

Under Rule 402 of the Federal Rules of Evidence, relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. FED. R. EVID. 402. Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Although evidence must be relevant to be admissible, Rule 401 does not set a high standard for admissibility. *Hurley v. Atl. City Police Dep't*, 174 F. 3d 95, 109–10 (3d Cir. 1999) (citation omitted). The Third Circuit has explained:

> [R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Because the rule makes evidence relevant if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact.

*Blancha v. Raymark Indus.*, 972 F. 2d 507, 514 (3d Cir. 1992) (emphasis in original) (citations and quotations omitted).

Under Rule 403, even relevant evidence is inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Rule 403 mandates a balancing test, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation." *United States v. Vosburgh*, 602 F. 3d 512, 537 (3d Cir. 2010). Relevant here, the advisory notes to Rule 403 state that "unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee's note; *see Dollar v. Long Mfg., N.C., Inc.*, 561 F. 2d 613, 618 (5th Cir. 1977) ("Of course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").

Federal Rule of Civil Procedure 32 governs the use of depositions in court proceedings:

> (a) Using Depositions.
> (1) In General. At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
> (C) the use is allowed by Rule 32(a)(2) through (8).
>
> \* \* \*
>
> (4) Unavailable Witness. A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> (A) that the witness is dead[.]

FED. R. CIV. P. 32(a)(1)(A)-(C), (a)(4)(A). Rule 32 further provides that "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." FED. R. CIV. P. 32(a)(6).

**V.   Discussion**

As discussed above, Prescott's counsel filed a statement noting Prescott's death, and Bennett has been substituted as Plaintiff in this matter. (*See* ECF Nos. 227, 228, 231.) Following Prescott's death, the Court directed Plaintiff to address these changed circumstances in relation to her motion in limine to permit Prescott's deposition testimony to be read during trial. (ECF No. 237 at 2.) Because Plaintiff has now renewed her motion in limine, (ECF No. 239), the Court will deny as moot Plaintiff's first motion in limine, (ECF No. 219). However, the Court will still consider the parties' briefs and exhibits, to

the extent that they are relevant, that were filed in relation to Plaintiff's first motion. (*See* ECF Nos. 220, 223, 224.)

Initially, the Court notes that, in relation to Plaintiff's motion in limine to be permitted to read Prescott's deposition testimony, Defendants filed a motion to compel the deposition of Dr. Joseph M. Kosakoski, Jr. (ECF No. 241.) Specifically, Defendants argued that they should be permitted to question Dr. Kosakoski about Prescott's mental condition because prior to Prescott's March 19, 2013, deposition, Dr. Kosakoski diagnosed him with frontal lobe syndrome, traumatic brain injury, cognitive dysfunction, oppositional defiant disorder, disruptive behavior disorder, daily temperamental extremes, low frustration tolerance, and an increased risk of developing dementia. (*Id.* ¶ 42.) Defendants also noted that Prescott fell four months before his deposition and again just two days before his deposition. (*Id.* ¶¶ 43-44.) The Court granted Defendants' motion to compel the deposition of Dr. Kosakoski, ordering the parties to complete the deposition by January 8, 2016, and ordering Defendants to file a transcript of the deposition by January 13, 2016, so that the Court may decide Plaintiff's motion in limine to be permitted to read Prescott's deposition testimony before trial commences on January 19, 2016. (ECF No. 249 at 13.)

In the instant motion in limine, Plaintiff argues that she should be permitted to read Prescott's deposition at trial because Prescott was competent during his March 19, 2013, deposition. (ECF No. 239 at 2-3.) Specifically, Plaintiff includes excerpts from the deposition and asserts that Prescott stated that he did not have any problems recollecting events, did not have any short-term memory loss, was aware of the 2009 accident, and

9

was not confused, disoriented, or incoherent. (*Id.* at 2, 5.) Plaintiff also explains that Prescott underwent an Independent Medical Examination with Defendants' expert, Dr. Richard Bennett, on June 26, 2013. (*Id.* at 3.) After Dr. Bennett conducted a physical examination of Prescott, interviewed Prescott, and reviewed "voluminous records" that included forty-eight records and Prescott's deposition transcript, he concluded that Prescott "appears to be competent at this time." (*Id.* (emphasis omitted).)

In response, Defendants argue that Plaintiff's counsel denied them of the right to cross-examine Prescott during the deposition. (ECF No. 252 at 2, 4.) Defendants claim that Plaintiff's counsel objected to leading questions because "he too recognized the mental state of his client." (*Id.* at 3.) Defendants also note that Plaintiff's counsel stated that Prescott had a "TBI [traumatic brain injury]" during the deposition, asserting that Plaintiff's counsel's position was that the injury impaired "Prescott's cognitive ability to recall basic facts and answer basic questions." (*Id.* (emphasis omitted).) Defendants contend that Prescott's answers during the deposition were nonresponsive, confused, and coached by his counsel. (*Id.* at 3-4.) Because Defendants did not have an opportunity to cross-examine Prescott, they argue that allowing Plaintiff to read "isolated, self-serving portions" of the deposition "would be overwhelmingly prejudicial" and "would also confuse and mislead the jury about the incident and the severity of [Prescott's] impairments and his ability to understand and recollect events." (*Id.* at 4-5.)

"It is well settled that the competency of a witness is presumed and the burden to show incompetency falls upon the party asserting it." *Commonwealth v. Hart*, 460 A.2d 745, 747 (Pa. 1983); *see also Commonwealth v. Dowling*, 883 A.2d 570, 577 (Pa. 2005). "At

law, every person is competent to be a witness unless otherwise provided by statute or by the Rules of Evidence." *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 945 (Pa. 2004). "The law commits much to the discretion of the trial judge in determining the question of the competency of a witness, where there is no statutory definition of competency." *Piepke v. Philadelphia & R. R. Co.*, 89 A. 124, 125 (Pa. 1913); *see also Commonwealth v. Hart*, 460 A.2d at 747 ("The determination of competency is a matter for the sound discretion of the trial court, which will not be disturbed absent a clear abuse of that discretion.").

Here, Defendants assert that Prescott was so incompetent during his deposition that it cannot be read during trial. The Court has reviewed the transcripts of Prescott's deposition and Dr. Kosakoski's deposition. Regarding Prescott's deposition, Defendants only cite to the following example of Prescott's "nonresponsive and confused" testimony:

> Q. Did you ever tell [Plaintiff] why you had your accident?
> A. Why?
> Q. Yes.
> A. I didn't have it because of a cause. I didn't want it.
> Q. Okay.
> A. So why it [the accident] happened?
> Q. Yes.
> A. I don't know.
> Q. You don't know how the accident occurred, is that fair to say?
> A. Right.

(ECF No. 252 at 3-4 (emphasis omitted).) The Court notes that Prescott appeared to be confused when he testified that his roundtrip mileage between Lewisbury, Pennsylvania, and Emlenton, Pennsylvania, was 1,960 miles. (ECF No. 239 at 34.) He later clarified that the roundtrip mileage was 190 miles. (*Id.* at 36.) Although Prescott may have exhibited

11

some confusion during his four-hour deposition, and although Prescott was diagnosed with frontal lobe syndrome, traumatic brain injury, cognitive dysfunction, oppositional defiant disorder, disruptive behavior disorder, daily temperamental extremes, low frustration tolerance, and an increased risk of developing dementia before his deposition, the Court cannot conclude that he was incompetent at his deposition. *See, e.g., Jackson v. United Airlines, Inc.*, No. 3:08-CV-182, 2009 U.S. Dist. LEXIS 51181, at *10-11 (E.D. Va. June 17, 2009) ("Even though [the deponent] may have been diagnosed with the onset of dementia, and there are portions of her deposition testimony that are not coherent, or at least demonstrate confusion and misunderstanding, *e.g.*, it is not the year 1990, not only must the Court presume her competency, her testimony concerning the salient events of the specific incident at the airport does not exhibit such a level of confusion, let alone mental incompetency, to preclude its use at trial, as a matter of law, thereby foreclosing consideration by the jury.") (internal citations omitted).

Defendants provide examples of impeachment evidence that they were unable to use during Prescott's deposition and argue that, without this evidence, the jury will be prevented from properly assessing Prescott's testimony. (ECF No. 252 at 5-7.) Specifically, Defendants state that "a small portion" of Prescott's testimony "appears to be a concise, succinct recollection of the accident" but was actually "the product of post-accident information he obtained from [Plaintiff] and others." (*Id.* at 5-6.) Defendants argue that they will be prejudiced by their inability to confront Prescott with: (1) his inability to recall which lane he was in when the accident occurred; (2) his admission that he was amnestic to the events before and after the accident; (3) his mental state at the time

of the deposition; (4) his admission to Page that he did not know why he went off the road; (5) his hiring of an investigator; (6) his failure to report to the police that an R&L vehicle was involved in the accident; (7) internet postings stating that Prescott had no recollection of what occurred the night of the accident; (8) Ron Rader's statements that Prescott did not know what happened at the accident; and (9) FedEx's reports stating that the accident was a single-vehicle accident. (*Id*. at 6-7.)

In support of their argument that they will be prejudiced by the admission of Prescott's deposition testimony, Defendants cite to a Seventh Circuit case, *Griffin v. Foley*, 542 F.3d 209 (7th Cir. 2008), for the proposition that there is "a distinction between discovery and trial depositions." (*Id*. at 8.) Within the Third Circuit, however, it is well settled that "Rule 32 makes no distinction between 'discovery depositions' and 'trial depositions.'" *Vandenbraak v. Alfieri*, No. 01-CV-482, 2005 U.S. Dist. LEXIS 9882, at *17 (D. Del. May 25, 2005) (permitting deposition testimony to be read because "[i]f the defendants chose not to ask questions, they must live with that choice. They cannot now be heard to complain about living with the record they had a hand in creating."); *see also Weiss v. First Unum Life Ins.*, No. 02-CV-4249, 2010 U.S. Dist. LEXIS 24097 (D.N.J. Mar. 15, 2010) ("[T]he Federal Rules of Civil Procedure draw no distinction between discovery depositions and depositions taken for use at trial."); *Wheeler Peak, LLC v. L.C.I.2, Inc.*, No. 07-CV-1117, 2010 U.S. Dist. LEXIS 9251, at *8 (D.N.M. Jan. 26, 2010) ("The Federal Rules of Civil Procedure do not use the term 'trial deposition.' While practicing lawyers use the term, the Federal Rules do not distinguish between 'trial' depositions and deposition for other purposes."). Moreover, the nine items that Defendants include in support of their

13

argument that they will be prejudiced by their inability to confront Prescott, (*see* ECF No. 252 at 6-7), are facts which can be offered through other witnesses, if deemed admissible by the Court. Thus, any prejudice that Defendants may suffer is significantly reduced.

Regarding Dr. Kosakoski's deposition, the Court finds that Dr. Kosakoski's testimony does not support Defendants' argument that Prescott was so incompetent during his deposition that it cannot be read to the jury. Specifically, Dr. Kosakoski stated that Prescott exhibited delirium-like symptoms a few times in 2009 and 2010 as a result of exacerbation of his chronic obstructive pulmonary disease (COPD) and that delirium occurs from acute metabolic issues, hypoxemia, COPD flare-up, and metabolic acid base issues. (ECF No. 272 at 52, 55.) Dr. Kosakoski testified that Prescott had both short-term and long-term memory in 2012 and that he did not experience Prescott's memory deficits until 2014 and 2015. (*Id.* at 56-57.) Dr. Kosakoski believed that Prescott's memory issues from 2009 through 2012 were related to a gradual but progressive age-related memory decline. (*Id.* at 57, 66, 78-79) Dr. Kosakoski also stated that Prescott's confusion and major dysfunctions during this time were as a result of Prescott having a COPD flare-up or stopping his medications. (*Id.* at 66.) As of 2012, Dr. Kosakoski believed that there was an increased likelihood that Prescott would experience progression of cognitive dysfunction and an increased risk of developing dementia, which could accelerate as early as one year or as late as five years. (*Id.* at 68-70.) In 2014 and 2015, Prescott had taken "a significant turn for the worse and had almost an exponential decline" when his condition became "fixed and progressive." (*Id.* at 70, 75.) Dr. Kosakoski therefore opined that Prescott would be unable to participate in his trial. (*Id.* at 70-74.)

In discussing an incident in 2009 when Prescott called his granddaughter his cat and attempted to pet her, Dr. Kosakoski testified that Prescott's behavior was a result of neuronal dysfunction, which improved in 2010. (*Id.* at 80-82.) When a neuropsychological status was administered in 2009, Prescott's immediate memory and delayed memory were among the lowest classifications; Dr. Kosakoski could not recall whether the test was conducted again to identify any improvements in Prescott's condition. (*Id.* at 101-02.) He noted that he suspected that Prescott was not suffering from COPD exacerbation during the testing and also stated that patients can gain substantial recovery of faculties within ten, twelve, or fourteen months after a head injury. (*Id.* at 139-40.)

In discussing incidents in 2010 when Prescott hit Plaintiff with a stapler and when Prescott stated that Plaintiff threw him into the fireplace, Dr. Kosakoski noted that Prescott had stopped taking his medication and testified that Prescott had evidence of disinhibition from his frontal lobe syndrome. (*Id.* at 115, 118-20, 124.) In, 2011, Dr. Kosakoski diagnosed Prescott with oppositional defiant disorder and noted that he was not taking his medication on some occasions. (*Id.* at 127-29.) In discussing incidences in 2012 when Prescott had increased confusion, asked about his truck that he no longer drove, and asked for his brother who had died ten years earlier, Dr. Kosakoski stated that these incidents were a result of a COPD infection and hypozemia. (*Id.* at 131-35.) Dr. Kosakoski noted that Prescott fell in 2012 and that a CT of his brain showed no acute bleed or edema, making it unlikely that the fall triggered memory problems. (*Id.* at 136-38.) He stated that Prescott's cognitive deficits and severe mental disability from 2009

until 2012 were in conjunction with Prescott discontinuing his medication and suffering from COPD exacerbation. (*Id.* at 138-39.) Dr. Kosakoski testified that, as of 2012, Prescott appeared to be competent to him. (*Id.* at 146-47.)

Regarding Prescott's March 19, 2013, deposition, Dr. Kosakoski stated that he did not read the transcript. (*Id.* at 147.) When questioned regarding Prescott's statement that his roundtrip mileage between Lewisbury, Pennsylvania, and Emlenton, Pennsylvania, was 1,960 miles, Dr. Kosakoski did not know whether Prescott's statement was the product of his traumatic brain injury and believed that it was an impulsive response. (*Id.* at 148-51, 198.) Dr. Kosakoski opined that Prescott incorrectly stated that he did not recall having any health issues before 2009 because of his frustration tolerance and agreed that it may have been a product of his short-term and long-term memory loss. (*Id.* at 151-53.) In discussing a fall that Prescott had two days before his deposition, Dr. Kosakoski stated that progress notes indicated that Prescott had a COPD infection on March 21, 2013. (*Id.* at 153-57.) Dr. Kosakoski testified that he has never been involved in having someone declared incompetent and stated that Prescott appeared to know the difference between right and wrong at the deposition. (*Id.* at 199.)

Based upon its review of Prescott's deposition and Dr. Kosakoski's deposition, the Court cannot conclude that Prescott was incompetent during his deposition and will therefore permit Plaintiff to read Prescott's deposition testimony during the trial, subject to further rulings by the Court. *See, e.g., Nat'l Sign & Signal Co. v. Am. Bright Optoelectronics Corp.*, No. 06-CV-279, 2008 U.S. Dist. LEXIS 60959, at *1-2 (W.D. Mich. Feb. 22, 2008) (admitting the deposition testimony of the plaintiff's witness because he was

dead and the defendant deposed him); *Garcia v. Estate of Arribas*, No. 04-CV-1159, 2006 U.S. Dist. LEXIS 16866 (D. Kan. Mar. 31, 2006) ("Rule 32(a)(3) applies to allow any party to use the deposition for any purpose because the witness . . . is dead."); *Frank S. Sinkwich, Inc. v. Texaco Refining & Marketing, Inc.*, 120 F.R.D. 540, 541 (M.D. Ga. 1988) (explaining that "[i]t is clear that the deposition of a party may be used under clause (A) of Rule 32 (a)(3) if the party is dead").

Regarding Defendants' concern that they will be prejudiced when the jury "hear[s] a short sound-bite of [Prescott's] deposition," (ECF No. 252 at 7), the Court notes that Defendants may also designate portions of the deposition to be read to the jury. *See* FED. R. CIV. P. 32(a)(6) ("If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts."). Additionally, "[w]hen a deposition is used at trial pursuant to Rule 32(a), parties may make objections to portions of the deposition's admissibility." *Wise v. Wash. County*, No. 10-CV-1677, 2014 U.S. Dist. LEXIS 29267, at *6 (W.D. Pa. Mar. 7, 2014) (citing FED. R. CIV. P. 32(b)). The parties "are not limited to the objections raised during the deposition." *Id.* (citing 8A Wright & Miller, *Federal Practice and Procedure* § 2151, 671-72 (3d ed. 2010)). The Court will therefore order Plaintiff to file her designations of Prescott's and Dr. Kosakoski's deposition testimony, if any, by January 13, 2016. Defendants shall file their designations of Prescott's and Dr. Kosakoski's deposition testimony, if any, by January 14, 2016. The parties shall file their objections to the designations of Prescott's and Dr. Kosakoski's

deposition testimony, if any, by January 15, 2016, so that the Court may rule upon them before trial begins on January 19, 2016.

**V.     Conclusion**

For the reasons set forth above, Plaintiff's first motion in limine to read the deposition testimony of William M. Prescott at trial (ECF No. 219) will be denied as moot. Plaintiff's renewed motion in limine to read the deposition testimony of William M. Prescott at trial (ECF No. 239) will be granted, subject to further rulings by the Court. Plaintiff shall file her designations of William M. Prescott's and Dr. Joseph M. Kosakoski, Jr.'s deposition testimony, if any, by January 13, 2016. Defendants shall file their designations of William M. Prescott's and Dr. Joseph M. Kosakoski, Jr.'s deposition testimony, if any, by January 14, 2016. The parties shall file their objections to the designations of William M. Prescott's and Dr. Joseph M. Kosakoski, Jr.'s deposition testimony, if any, by January 15, 2016.

An appropriate order follows.
.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM PRESCOTT, | ) | |
| | ) | Civil Action No. 3:11-203 |
| Plaintiff, | ) | |
| v. | ) | Judge Kim R. Gibson |
| | ) | |
| R&L TRANSFER, INC., GREENWOOD | ) | |
| MOTOR LINES d/b/a R&L CARRIERS, | ) | |
| and R&L CARRIERS SHARED SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

And now, this 12th day of January, 2016, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's motion in limine to read the deposition testimony of William M. Prescott at trial (ECF No. 219) is **DENIED** as moot.

2. Plaintiff's motion in limine to read the deposition testimony of William M. Prescott at trial (ECF No. 239) motion is **GRANTED**, subject to further rulings by the Court.

    a. Plaintiff shall file her designations of William M. Prescott's and Dr. Joseph M. Kosakoski, Jr.'s deposition testimony, if any, by January 13, 2016.

    b. Defendants shall file their designations of William M. Prescott's and Dr. Joseph M. Kosakoski, Jr.'s deposition testimony, if any, by January 14, 2016.

    c. The parties shall file their objections to the deposition designations, if any, by January 15, 2016.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE